# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

LARRY SCHRACK,
         Plaintiff

vs

R+L CARRIERS, INC., et al.
         Defendants

Case No. 1:10cv603
Weber, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

This matter is before the Court on defendants' motion for summary judgment (Doc. 42), plaintiff's memorandum in opposition and request for oral argument (Doc. 45), and defendants' reply in support of their motion. (Doc. 60).

## I. Introduction

Plaintiff Larry Schrack brings this employment discrimination and retaliation action against defendants R+L Carriers, Inc., R+L Carriers, and R+L Carriers Shared Services LLC. (Doc. 1). Plaintiff claims that defendants interfered with his right to take leave under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, et seq., and retaliated against him for exercising his rights under the FMLA by terminating his employment. Plaintiff further claims that defendants terminated his employment based on a disability in violation of the Americans with Disability Act (ADA), 42 U.S.C. § 12101, et seq., and Ohio Rev. Code Ch. 4112, and his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq. and Ohio Rev. Code Ch. 4112.

## II. Defendants' motion for summary judgment

Defendants move for summary judgment on all claims against them pursuant to Fed. R. Civ. P. 56. Defendants contend that R+L Carriers, Inc. and R+L Carriers must be dismissed

because the entity "R+L Carriers" does not exist and neither "R+L Carriers" nor "R+L Carriers, Inc." was Schrack's employer at any time. Defendants contend that plaintiff's claims against his employer, defendant R+L Carriers Shared Services LLC (R+L), must be dismissed because plaintiff was selected for termination as part of a company-wide economic reduction in force (RIF) based on the fact that he was the least senior member of his department. Defendants contend that because plaintiff was not replaced but was terminated as part of a RIF, he has a heightened burden to come forward with additional evidence to establish a prima facie case of age and disability discrimination, which he cannot meet. Defendants further assert that plaintiff cannot prove his FMLA claims for interference with his FMLA rights and retaliatory discharge because plaintiff was granted all the FMLA leave to which he was entitled, and there is no evidence of a causal connection between plaintiff's FMLA leave and his termination. Defendants assert that even assuming plaintiff could establish a prima facie case of age or disability discrimination or retaliatiory discharge, these claims must fail because plaintiff has not produced any evidence to rebut defendant's proffered nondiscriminatory reason for his termination and to establish pretext.

### III. Undisputed Facts

1.    R+L Carriers Shared Services LLC (R+L) hired plaintiff on November 12, 2007, at the age of 55 to serve as a Service Installation Technician based in R+L's Wilmington, Ohio facility.

2.    Schrack worked for R+L for one and one-half years.

3.    Schrack was a member of the Security Installation Department. In his position, Schrack was charged with installing and repairing fire and security systems at R+L's various

facilities around the country. Schrack's job responsibilities required him to regularly drive in an R+L company vehicle long distances to R+L's nationwide facilities.

4. Schrack began experiencing symptoms of fatigue and grogginess in the fall of 2008. (Schrack Depo. p. 25).

5. On March 23, 2009, plaintiff was issued a verbal warning for falling asleep in a meeting. When R+L issued plaintiff the verbal warning, it informed him that sleeping on the job would not be tolerated. Schrack understood when he received the warning that if he were found sleeping on the job again, he would be fired.

6. Just days later, on March 31, 2009, R+L sent Schrack to the home of one of the owners of the company to upgrade security equipment. Another employee, Steve White, found plaintiff sleeping on a couch in the owner's home. White called plaintiff's supervisor, David Wallace, who came to the residence and found that plaintiff was back up and working.

7. The next day, April 1, 2009, Wallace sent another member of the Security Installation Department, Steve Bennett, back to the R+L owner's home to help Schrack finish the project. When he arrived, Bennett discovered Schrack sleeping in a company van in the driveway.

8. Plaintiff was terminated on April 1, 2009. (Schrack Depo. at 83).

9. Shortly thereafter, Schrack's daughter, Stacy Schrack Walton, contacted R+L's Human Resources Department and informed R+L that plaintiff had been hospitalized and was being treated for narcolepsy.

10. During this discussion, Walton demanded that R+L grant Schrack FMLA leave. R+L

provided Schrack with an FMLA packet, which he and his physicians completed and returned to R+L.

11. Schrack was subsequently reinstated and granted FMLA leave during April and May of 2009. (Schrack Depo. at 80-83, 90).

12. In June 2009, Schrack received the appropriate releases from his physicians, and R+L Benefits Manager Scott Armour gave approval for Schrack to return to work.

13. Dale Ellenbarger was the Manager of R+L's Telecommunications Department, of which the Security Installation Department was a subdivision.

14. The Security Installation Department was comprised of three individuals.

15. Schrack was terminated on June 12, 2012.

16. No one has ever been hired to replace Schrack.

### IV. Summary Judgment Standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. The court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)). However, a district court

need not view the facts in the light most favorable to the nonmoving party if that party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* (citing *Cities Serv.*, 391 U.S. at 288-289). If the evidence is merely colorable, *Dombrowski v. Eastland*, 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted. *Anderson*, 477 U.S. at 249.

## V. Oral Argument

The legal and factual issues involved in this case are not complex and they have been fully briefed by the parties. Pursuant to S. D. Ohio Civ. R. 7.1, the Court therefore finds that oral argument is not necessary and plaintiff's request for same is denied.

## VI. Resolution

### 1. Defendants R+L Carriers and R+L Carriers, Inc. should be dismissed from the lawsuit.

Defendants move for summary judgment in favor of R+L Carriers and R+L Carriers, Inc. on the grounds there is no such entity as R+L Carriers and there is no evidence that plaintiff was employed by either R+L Carriers or R+L Carriers, Inc. (Doc. 42 at 16-17). In support of their position, defendants have submitted the affidavit of Jeff Copsey, Director of Human Resources for R+L, who states that R+L was Schrack's employer from the date of hire through the date of his termination; the entity "R+L Carriers" does not exist; and neither "R+L Carriers" nor "R+L Carriers, Inc." was Schrack's employer at any time. (Doc. 42-1, ¶ 9).

In response, plaintiff argues that the Court should not dismiss any defendant because all three named defendants allegedly employ individuals at the same Ohio location and are controlled by the same family. (Doc. 45 at 21). Plaintiff cites cases involving various "R+L entities" in support of his position (*Id.*), but he has not produced any evidence that there is an entity known as "R+L Carriers" or that shows he was ever employed by an entity of that name or by R+L Carriers, Inc. Because plaintiff has failed to carry his burden to show there is a genuine issue of material of fact as to whether these two defendants can be held liable on the claims he brings, summary judgment should be granted in favor of defendants R+L Carriers and R+L Carriers, Inc.

**2. R+L should be granted summary judgment on plaintiff's age discrimination claims.**

Defendant[1] asserts that plaintiff cannot establish his age discrimination claims because he was not replaced by someone outside the protected class but instead his job has not been filled and remains open (Doc. 42 at 10, citing Ellenbarger Depo. at 11), and no direct, circumstantial or statistical evidence exists tending to indicate that R+L singled him out for discharge in the RIF for impermissible reasons. R+L further contends that no reasonable juror could conclude that it hired plaintiff at age 55 only to discriminate against him two years later based on his age. (*Id.*).

Plaintiff alleges he can establish a prima facie case of age discrimination because in addition to satisfying the first three prongs of his prima facie case, he can satisfy the fourth prong by showing defendant retained a significantly younger individual in his place. (Doc. 45 at 14-15).

In an age discrimination case, whether a plaintiff seeks to prove his case by direct or circumstantial evidence, he has the burden of persuasion to demonstrate "that age was the

---

[1] From this point forward, the term "defendant" as used in this Report and Recommendation will refer to R+L Carrier Shared Services LLC.

'but-for' cause of his employer's adverse action." *Geiger v. Tower Automotive*, 579 F.3d 614, 621 (6th Cir. 2009) (citing *Gross v. FBL Fin. Services, Inc.*, 557 U.S. 167, 178 n.4 (2009)). Where a plaintiff seeks to establish his age discrimination claim by circumstantial evidence, the claim may be analyzed under the framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 802-804 (1973). *See Schoonmaker v. Spartan Graphics Leasing, LLC,* 595 F.3d 261, 264 n.2 (6th Cir. 2010) (citing *Geiger*, 579 F.3d at 622). This same evidentiary framework also applies to discrimination claims brought under the Ohio Civil Rights statute. *Kimble v. Wasylyshyn*, 439 F. App'x 492, 496 (6th Cir. 2011) (citing *Hollins v. Atl. Co.*, 188 F.3d 652, 658 (6th Cir. 1999)).

A plaintiff may establish a discrimination claim by either direct or circumstantial evidence. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010). "Direct evidence of discrimination is 'that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc). "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.*

A plaintiff who lacks direct evidence of discrimination may establish a prima facie case of discrimination through circumstantial evidence by showing that: 1) he is a member of a protected class; 2) he suffered an adverse employment action; 3) he was qualified for the position lost or not gained; and 4) he was replaced by an individual outside the protected class. *Mitchell v. Toledo Hospital,* 964 F.2d 577, 582 (6th Cir. 1992). The fourth prong is modified for an age discrimination claim to require replacement by a "substantially" or "significantly" younger person,

which may include an individual within the protected class. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312-313 (1996); *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003). Plaintiff may also establish the fourth prong of a prima facie case of discrimination by showing that he was treated less favorably than a similarly-situated individual outside the protected class. *See Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002).

If the plaintiff establishes a prima facie case, the employer can overcome the prima facie case by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If the employer carries its burden, the plaintiff must show that the reasons offered by the employer were not its true reasons but were a pretext for discrimination. *Id.* at 804.

Initially, the Court rejects defendant's contention that a jury in this case is precluded from finding that R+L discriminated against plaintiff on account of his age based on the same actor inference. First, the same actor inference, which allows a jury to infer from the fact that the same individual hired and fired the employee that no discrimination occurred, is typically one for the jury to draw. *See Wexler*, 317 F.3d at 572-73. Second, the individual who purportedly made the decision to terminate plaintiff's employment, Ellenbarger, was not the same individual who hired plaintiff, so that the same actor inference does not apply. (Doc. 45 at 15, citing Schrack Depo., p. 79-Wallace was the individual who hired plaintiff). Plaintiff nonetheless has not come forward with sufficient evidence to proceed to trial on his age discrimination claims for the reasons explained below.

There is no dispute that plaintiff can satisfy the first three prongs of a prima facie case of age discrimination. However, the parties dispute whether plaintiff has come forward with

sufficient evidence to satisfy the fourth prong, i.e., whether he was replaced. Defendant contends that plaintiff was not replaced but was terminated as part of a company-wide RIF for which plaintiff was selected based solely on seniority. Plaintiff appears to deny defendant implemented a RIF. Assuming there was a RIF, plaintiff denies he was selected for a RIF based on seniority or other legitimate considerations.

A RIF occurs when business considerations cause an employer to eliminate one or more positions within the company. *Brocklehurst v. PPG Industries, Inc.*, 123 F.3d 890, 895 (6th Cir. 1997) (citing *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)). An employee is not eliminated as part of a RIF when he is replaced after his discharge. *Barnes*, 896 F.2d at 1465. An employee is not replaced when another employee is assigned to perform that individual's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. *Id.* An employee is replaced only when another employee is hired or reassigned to perform that individual's duties. *Id. See also Blair v. Henry Filters, Inc.*, 505 F.3d 517, 529 n.11 (6th Cir. 2007), *overruled on other grounds by Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2011).

Defendant R+L relies on the affidavits of Jeff Copsey, Vice-President of Human Resources for R+L, to show that R+L terminated plaintiff as part of a company-wide RIF. (Docs. 42-1, 61). In his affidavits, Copsey asserts that in early 2009, he participated in a decision R+L made to reduce its workforce when the recession caused it to lose business and required it to reduce payroll; although the company was initially able to reduce payroll by not replacing workers when they retired or quit, eventually R+L was forced to institute a company-wide RIF that included plaintiff's department; and from May through the end of 2009, approximately 68

9

employees in R+L's Wilmington, Ohio facilities were terminated in the company-wide RIF. (Doc. 42-1). Copsey has attached to his second affidavit a list of the 68 individuals who were terminated in the RIF and their dates of termination, which range from May 22, 2009 to December 31, 2009. (Doc. 61, Attachment). Plaintiff's name is listed with a termination date of June 12, 2009. (*Id.*).

Plaintiff does not dispute that he was one of 68 employees who were terminated at R+L between May and December 2009 and that he was not replaced. Thus, it cannot reasonably be disputed that plaintiff was terminated as part of the RIF. *See Barnes*, 896 F.2d at 1465 (RIF occurs when business considerations cause an employer to eliminate one or more positions within the companay). Accordingly, plaintiff must come forward with additional evidence to "show that age was a factor in eliminating his position. . . ." *Johnson v. Franklin Farmers Co-op.*, 378 F. App'x 505, 510 (6th Cir. 2010) (citing *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1126 (6th Cir. 1998) (quoting *Hawley v. Dresser Indus., Inc.*, 958 F.2d 720, 723 (6th Cir. 1992)).

Plaintiff cites the affidavit of Eugene Rhodes as additional evidence that R+L singled him out for termination on account of his age. (Doc. 45 at 15, citing Doc. 45-2). Rhodes states in his affidavit that he worked as Senior Director of Human Resources for R+L Carriers from February 2009 until October 2009, and that unidentified representatives of defendant "stated in meetings that the average age of the workforce needed to be lowered to 32 years of age." (Doc. 45-2). However, Rhodes does not provide any dates for these meetings, he does not identify the individuals who made the comments, and he provides no indication that these comments were made by a decisionmaker in plaintiff's case. Thus, Rhodes' affidavit is not competent evidence of age discrimination. *See Tooson v. Roadway Express, Inc.* 47 F. App'x 370, 375 (6th Cir. 2002)

(remarks of individuals without any decisionmaking authority over the plaintiff are not evidence of discriminatory intent).

Plaintiff also offers evidence that defendant retained a significantly younger individual who was born in 1967 and who worked in his department, Charlie Cupp. (Doc. 45, pp. 14-15). Plaintiff argues that a reasonable jury could rely on evidence that defendant retained Cupp instead of him to find that he has established a prima facie case of age discrimination. (*Id*. at 15, citing *Skalka v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414, 420-21 (6th Cir. 1999)). However, Sixth Circuit case law is clear that a plaintiff cannot rely solely on evidence that the defendant retained a significantly younger individual to establish his prima facie case of age discrimination in the context of a RIF. *Schoonmaker,* 595 F.3d at 266-268.

Although the Sixth Circuit in *Skalka* determined that "additional evidence" required to establish a prima facie case in the context of a RIF "may include 'showing that persons outside the protected class were retained in the same position,'" *Id*. at 421 (quoting *EEOC v. Clay Printing Co.*, 955 F.2d 936, 941 (4th Cir. 1992)), the Sixth Circuit has since clarified that simply making this showing is insufficient. *Schoonmaker,* 595 F.3d at 266-268. The Sixth Circuit in *Schoonmaker* discounted the above-quoted language in *Skalka* as dicta because the plaintiff had already provided additional evidence of discrimination; specifically, plaintiff had shown he was "the most competent member of his peer group, as measured by objective, company-established criteria, suggesting that he 'possessed qualifications superior to those of a younger co-worker working in the same position as the plaintiff.'" *Id*. at 266 (citing *Barnes*, 896 F.2d at 1465-66). The *Schoonmaker* Court further found the *Skalka* decision was inconsistent with a prior Sixth Circuit decision, *Sahadi v. Reynolds Chem.*, 636 F.2d 1116, 1118 (6th Cir. 1980) (rejecting the

proposition that a prima facie case is automatically established whenever an "employee terminated during an economic cutback can establish that a younger person was retained in a position which plaintiff is capable of performing" as otherwise every employer who terminated an employee in the protected age group would be required to justify the termination.). The Court in *Schoonmaker* found its decision was consistent with the following decisions from the Sixth Circuit: *Dabrowski v. Warner-Lambert Co.*, 815 F.2d 1076, 1078-79 (6th Cir. 1987) (noting that the Sixth Circuit "has long recognized that the mere fact that a younger employee or applicant receives better treatment than an older one is insufficient to carry the burden of proof in a case under the [ADEA]"); *LaGrant v. Gulf & W. Mfg. Co.*, 748 F.2d 1087, 1090-91 (6th Cir. 1984) (noting that "[t]he mere termination of a competent employee when an employer is making cutbacks due to economic necessity is insufficient to establish a prima facie case of age discrimination" and holding that the plaintiff failed to state a prima facie case by merely showing that a younger department head was retained, and the plaintiff, also a department head, was laid off); *Adams v. Proto Plastics, Inc.*, 151 F. App'x 468, 470 (6th Cir. 2005) (mere fact that substantially younger employees in comparable positions are retained during RIF is not sufficient to state a prima facie case); *Reminder v. Roadway Express, Inc.*, 215 F. App'x 481, 483-84 (6th Cir. 2007) (finding plaintiff had produced no "additional evidence" even though younger workers were retained during RIF).

Here, the only competent evidence plaintiff has produced to establish his prima facie case of age discrimination is evidence that a significantly younger employee was retained. This does not constitute the "additional evidence" that is required to establish a prima facie case in the context of a RIF. Plaintiff has therefore failed to satisfy the heightened prima facie standard

applicable in the context of a RIF.

Even if plaintiff had produced evidence to establish his prima facie case of age discrimination, plaintiff has not produced sufficient evidence to create a genuine issue as to whether the proffered nondiscriminatory reason for his discharge is a pretext for age discrimination. Defendant states that plaintiff was terminated as part of a company-wide RIF and that he was selected as the least senior member of his department. Plaintiff argues in his opposing memorandum that Cupp had less seniority than he did. (Doc. 45 at 19-20). However, plaintiff offers no evidence to refute the deposition of Karen Curl, defendant's Employee Relations Manager at the time of plaintiff's termination, that Cupp had a hire date of August 1997 and was reinstated with seniority rights after resigning in 2006 (Doc. 55, Curl Depo. at 24-27), thus giving him several more years seniority than plaintiff.

Plaintiff also contends that as in *Blair*, 505 F.3d 517, a reasonable fact-finder could determine based on the lack of an objective plan for the RIF that defendant's proffered nondiscriminatory reason for terminating him is a pretext for discrimination. (Doc. 45 at 20-21). However, this case is distinguishable from *Blair*. In *Blair*, 505 F.3d at 533-34, the Court found that the lack of an objective plan for the RIF, coupled with circumstantial evidence of age discrimination, would permit a reasonable fact-finder to conclude that the defendant's proffered nondiscriminatory reason for terminating the plaintiff was a pretext for discrimination. Here, plaintiff has not produced any circumstantial evidence that defendant singled him out for the RIF on account of his age. Thus, a reasonable fact-finder could not conclude based solely on the lack of an objective plan for the RIF that defendant's proffered reason for plaintiff's discharge was a pretext for age discrimination.

For these reasons, defendant should be granted summary judgment on plaintiff's age discrimination claims.

### 3. Summary judgment should be granted on the FMLA interference claim but denied on the FMLA retaliatory discharge claim.

Plaintiff premises his FMLA claim on two discrete incidents: (1) defendant's initial denial of his request for FMLA leave on approximately March 30, 2009 (FMLA interference), and (2) defendant's termination of plaintiff in June 2009 in alleged retaliation for taking FMLA leave (FMLA retaliatory discharge).

#### A. FMLA interference claim

Defendant R+L contends that plaintiff does not have a claim for FMLA interference based on the alleged denial of FMLA leave. Defendant asserts that after plaintiff's daughter, Stacy Schrack Walton, informed R+L that her father had a serious health condition, the company provided plaintiff with the necessary forms to request FMLA leave, reinstated his employment, and granted him FMLA leave retroactive to the date he was found sleeping on the job. (Doc. 42 at 14-15). Plaintiff responds by asserting he has adduced evidence which, if believed by the jury, requires the conclusion that defendant interfered with his use of leave, regardless of defendant's intent. (Doc. 45 at 9-10). Plaintiff contends that when he told his supervisor, David Wallace, about his narcolepsy diagnosis and his need for leave, Wallace informed plaintiff he had no accumulated vacation or paid sick leave and was required to report to work, thus interfering with plaintiff's attempt to exercise his right to leave pursuant to the FMLA. (*Id.*; Schrack Depo. at 55-56).

The Sixth Circuit recognizes the interference or entitlement theory under 29 U.S.C. §

2615(a)(1) as one of two discrete theories of recovery under the FMLA. *Seeger v. Cincinnati Bell Telephone*, __ F.3d __, No. 10-6418, 2012 WL 1592670, at *6 (6th Cir. May 8, 2012). Title 29 U.S.C. § 2615(a)(1) makes it unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise" any right under that subchapter. Such rights include the right of an eligible employee to take up to "12 workweeks of leave during any 12-month period" in the event of a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Any eligible employee also has the right upon return from such leave to be restored to the position he held when the leave commenced or to an equivalent position with equivalent pay and benefits. 29 U.S.C. § 2614(a)(1). An employer interferes with the exercise of an employee's rights under the FMLA when it refuses to authorize FMLA leave or discourages an employee from using such leave, 29 C.F.R. § 825.220(b), or interferes with a plaintiff's right to reinstatement following FMLA leave. *Hoge v. Honda of America Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004) (citing *Arban v. West Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003)). "If an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled." *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) (citing *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007)).

To establish a claim of FMLA interference, the plaintiff must show that "(1) [he] was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of [his] intention to take leave; and (5) the employer denied the employee FMLA benefits to which [he] was entitled." *Id.* (citing *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir.

2006) (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005)).

In order to invoke the protections of the FMLA, an employee must provide "notice and a qualifying reason for requesting the leave." *Cavin v. Honda Manuf., Inc.*, 346 F.3d 713, 723 (6th Cir. 2003) (quoting *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1988)). An employee can provide sufficient notice to his employer "that he needs FMLA-qualifying leave" without "invoking the FMLA" and "without using the words 'leave' or 'leave of absence.'" *Id.* at 725. The notice is sufficient if the employee provides enough information for the employer to reasonably conclude that the leave is needed for a serious health condition. *Id.* at 723. *See also Branham v. Gannett Satellite Info. Network, Inc.*, 619 F.3d 563, 572 (6th Cir. 2010); *Gipson v. Vought Aircraft Indus., Inc.*, 387 F. App'x 548, 555 (6th Cir. 2010) ("The information that the employee convey[s] to the employer [must be] reasonably adequate to apprise the employer of the employee's request to take leave for a serious health condition that render[s] him unable to perform his job.").

Although the Sixth Circuit has stated that an employer's intent is not relevant under the interference theory, *see Seeger*, No. 10-6418, 2012 WL 1592670, at *6; *Edgar v. JAC Prods.*, 443 F.3d 501, 507 (6th Cir. 2006), the Court has also indicated that interference with an employee's FMLA rights "does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Edgar*, 443 F.3d at 508 (citing *Arban*, 345 F.3d at 401; *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 979 (8th Cir. 2005); *Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008)).

There is no dispute that the first three elements of an FMLA interference claim are satisfied in this case. Defendant does not dispute that plaintiff was an eligible employee,

defendant is an employer as defined under the FMLA, and plaintiff was entitled to leave under the FMLA. Defendant denies that the notice element is satisfied, alleging there is no evidence that plaintiff asked Wallace for FMLA medical leave. (Doc. 60 at 13-15). Defendant alleges that plaintiff offers only his "self-serving" testimony to support his assertion that he told Wallace of his medical condition and that there is significant evidence from disinterested sources and from plaintiff himself that contradicts plaintiff's testimony on this point. (*Id.* at 13-14). However, "[a] court may not disregard evidence merely because it serves the interests of the party introducing it." *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 (6th Cir. 2010) (and cases cited therein). Moreover, the Court's role on summary judgment is not to weigh the evidence or make credibility determinations. *See Anderson*, 477 U.S. at 255. These are functions for the jury. *Id.* Drawing all justifiable inferences in plaintiff's favor, as the Court must on summary judgment, *see id.*, plaintiff gave defendant sufficient notice of a serious medical condition prior to his initial termination by informing his supervisor, Wallace, at the end of March 2009 that he had been diagnosed with narcolepsy and he needed medical attention and time off work to obtain medical treatment for his condition. (Schrack Depo. at 55-56). The fourth element of plaintiff's interference claim is therefore satisfied for summary judgment purposes.

The parties dispute the fifth element of plaintiff's FMLA interference claim, which is whether defendant denied plaintiff FMLA leave to which he was entitled. Although the evidence shows that plaintiff was initially denied leave and was instead terminated, plaintiff was subsequently granted FMLA leave of up to 12 weeks during April and May of 2009. (Doc. 42 at 15, citing Schrack Depo. at 83-84). Plaintiff has not produced evidence to show he was entitled to any additional FMLA leave. Thus, plaintiff has not shown that defendant interfered with his

rights under the FMLA by denying him medical leave benefits. *See Edgar*, 443 F.3d at 508

(citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) ("[Section] 2617 provides

no relief unless the employee has been prejudiced by the violation. . . .")). Plaintiff therefore is

not entitled to relief on his FMLA interference claim.

### B. FMLA retaliatory discharge

Plaintiff claims that R+L terminated him in retaliation for taking FMLA leave. The Sixth

Circuit recognizes a retaliation theory of recovery under the FMLA, 29 U.S.C. § 2615(a)(2),

which applies when a plaintiff claims he was discharged in retaliation for exercising his FMLA

rights. *Seeger,* No. 10-6418, 2012 WL 1592670, at *6 (citing *Edgar*, 443 F.3d at 508). The Sixth

Circuit applies the *McDonnell Douglas* burden-shifting framework to FMLA retaliation lawsuits.

*Id.* (citing *Donald*, 667 F.3d at 762); *Hunter v. Valley View Local Schools,* 579 F.3d 688, 692 (6th

Cir. 2009)).

### i. Plaintiff has established a prima facie case of retaliatory discharge.

To establish a prima facie case of FMLA retaliation, the plaintiff must show that "(1) [he]

was engaged in an activity protected by the FMLA; (2) the employer knew that [he] was

exercising [his] rights under the FMLA; (3) after learning of the employee's exercise of FMLA

rights, the employer took an employment action adverse to [him]; and (4) there was a causal

connection between the protected FMLA activity and the adverse employment action." *Id.* (citing

*Donald,* 667 F.3d at 761).

The parties dispute only the fourth prong of plaintiff's prima facie case of retaliatory

discharge, which is the causal link between plaintiff's FMLA leave and his termination.

Defendant argues that plaintiff cannot establish a causal connection because his position was

eliminated in a bona fide RIF based solely on seniority (Doc. 42 at 8, citing Ellenbarger Depo. at 18), plaintiff would have been terminated regardless of whether he had taken leave (Doc. 42 at 15-16, citing *Thompson v. UHHS Richmond Heights Hosp., Inc.*, 372 F. App'x 620 (6th Cir. 2010)), and plaintiff cannot rely solely on the temporal proximity between his return from FMLA leave and his termination to establish a causal connection between the two. (Doc. 60 at 16). Plaintiff contends that defendant cannot rely on its articulated reason for the employment decision to show the absence of a causal connection. (Doc. 45 at 10-11). Plaintiff asserts there is evidence of a causal connection as defendant terminated him initially within a few days after he informed Wallace of his need for FMLA leave, and defendant terminated him a second time less than a month after he attempted to return from FMLA leave. Plaintiff contends that the close temporal proximity between his FMLA leave and his termination, coupled with defendant's initial refusal to approve his request for FMLA leave to which he was entitled, is sufficient to establish a causal connection. (*Id.* at 11).

The Sixth Circuit "has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is "deemed indirect evidence such as to permit an inference of retaliation to arise." *Seeger*, No. 10-6418, 2012 WL 1592670, at *8 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004)). *See also Clark v. Walgreen Co.*, 424 F. App'x 467, 473 (6th Cir. 2011) ("[T]he court correctly credited the temporal proximity [two months] of [the plaintiff's] leave and his firing as sufficient evidence of a causal connection between the two."); *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such

19

temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of establishing a prima facie case of retaliation."). This is such a case where the very close temporal proximity between plaintiff's FMLA leave and his termination is sufficient "to meet the low threshold of proof necessary to establish a prima facie case of retaliatory discharge." *Seeger*, No. 10-6418, 2012 WL 1592670, at *8. Plaintiff unsuccessfully attempted to return to work from his FMLA leave on June 1, 2009, after he was cleared to return by Benefits Manager Armour, and he was terminated on June 12, 2009, the day after his doctor informed defendant that plaintiff was medically cleared to return to work. (Armour Depo. at 120-121; Exhs. 20, 21; Ellenbarger Depo. Exh. 1). Thus, plaintiff has established a prima facie case of FMLA retaliatory discharge.

### ii. Plaintiff has created a genuine issue of material fact as to pretext.

Defendant has proffered a legitimate nondiscriminatory reason for plaintiff's termination. Defendant asserts that plaintiff was terminated as part of the company-wide RIF that occurred over the course of several months in 2009, and that seniority was the lone criterion defendant took into account in deciding to terminate plaintiff. (Doc. 60 at 4-5, citing Ellenbarger Depo. at 18). Plaintiff contends that defendant's reasons are not its true reasons and that defendant singled him out for discharge in retaliation for taking FMLA leave. (Doc. 45 at 11).

The Sixth Circuit has categorized different evidentiary bases for three types of pretext showings: 1) defendant's reasons had no basis in fact; 2) the reasons did not actually motivate the employer's decision; or 3) the reasons were insufficient to warrant the decision. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009). The Sixth Circuit has

cautioned that *Manzer's* three-part test is not to be applied in a formalistic manner. *See Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009). Rather, the court must bear in mind that "[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Id.* The court must ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation and, if so, how strong the evidence is. *Id.* The Sixth Circuit in *Chen* explained,

> At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation. If so, her prima facie case is sufficient to support an inference of discrimination at trial. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993). But summary judgment is proper if, based on the evidence presented, a jury could not reasonably doubt the employer's explanation. *See Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 148 (2000). ("[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.").

*Id.*

Plaintiff has presented sufficient evidence to call into question the legitimacy of defendant's proffered explanation and to present an issue as to whether defendant singled him out for termination based on his protected FMLA activity. As set forth above, there is evidence that plaintiff was initially denied FMLA leave when he advised defendant of his medical condition and his need for leave; he was terminated on the basis of that same medical condition; he was subsequently reinstated and granted FMLA leave when his daughter intervened and threatened legal action; Benefits Manager Armour advised Ellenbarger on May 29, 2009, that plaintiff was cleared to return to work on June 1, 2009 (Armour Depo. Exh. 15); Wallace barely acknowledged plaintiff when he attempted to return to work on June 1, 2009 (Plaintiff's Depo. 120-121); when

21

he attempted to return to work on that date, plaintiff was sent home after being told more medical

information was needed, but defendant did not communicate further with plaintiff regarding the

need for such information (Schrack Depo. at 121-123); and although plaintiff purportedly was

terminated solely for reasons related to the RIF the day after defendant received a fax from

plaintiff's doctor answering all of its outstanding questions and clearing him to return to work

(Armour Depo. 120-22, Exhs. 20, 21), defendant did not communicate the termination decision to

plaintiff until after he had made repeated inquiries. (Armour Depo. at 130, Exh. 22; Schrack

Depo. at 92, 117-118). Plaintiff has also presented evidence indicating there were no objective

criteria for the decisionmakers to follow in deciding who to terminate in the RIF (Shroyer Depo at

14-15, 17-18) and Michael Shroyer himself, defendant's CEO, was seemingly unaware of how the

RIF was implemented. (Shroyer Depo. at 15-16; Exh. 1) (testifying RIF was conducted over a

short period of approximately 30 days whereas defendant's documentation indicates it occurred

over the course of seven months). The acute temporal proximity between plaintiff's FMLA leave

and his termination after plaintiff had been medically cleared to return to work, the lack of an

objective plan for the RIF, and the remaining circumstances surrounding plaintiff's attempt to

return to work following his FMLA leave, are sufficient to create a genuine issue of material fact

as to whether defendant's stated reason for plaintiff's termination is a pretext for FMLA

retaliation. *See Blair*, 505 F.3d at 533-34 (lack of an objective plan for the RIF, when coupled

with circumstantial evidence of discrimination, is sufficient to create a genuine issue of material

fact as to whether proffered nondiscriminatory reason for terminating plaintiff was a pretext for

discrimination).[2]  Summary judgment should be denied as to plaintiff's retaliatory discharge claim under the FMLA.

### C. Disability discrimination claim

### i. Plaintiff has established a prima facie case of discriminatory discharge based on his disability.

Plaintiff claims in the complaint that defendant discriminated against him on account of his disability by treating him less favorably than similarly situated non-disabled employees and terminating his employment on account of his disability.  (Doc. 1 at ¶¶ 45-54).  Plaintiff further claims in his opposing memorandum that defendant failed to accommodate his disability by refusing to give him time off in March of 2009 to establish control of his symptoms and by requiring him to return to work with no restrictions.  (Doc. 45 at 12-13).

Although plaintiff brings his federal disability discrimination claim under the ADA, the Americans with Disabilities Act Amendments Act of 2008 (ADAAA) applies in this case as the alleged discriminatory acts occurred after January 1, 2009.  *Milholland v. Sumner County Bd. of Educ.*, 569 F.3d 562, 566-67 (6th Cir. 2009).  The ADAAA, 42 U.S.C. § 12112(a), and Ohio Rev. Code § 4112.02 make it unlawful for a covered employer to discriminate against a qualified individual on the basis of disability with respect to discharge or other terms, conditions, and privileges of employment.  The analysis of plaintiff's disability discrimination claims is the same under both the federal and state statutes.  *See Jakubowski v. The Christ Hospital*, 627 F.3d 195 (6th Cir. 2010) (citing *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 872 (6th Cir. 2007)

---

[2]Plaintiff's age discrimination claim must be distinguished from plaintiff's FMLA and disability discrimination claims in this regard as plaintiff has not presented circumstantial evidence of age discrimination such as would permit a reasonable fact-finder to conclude that defendant's nondiscriminatory reason for terminating him was a pretext for age discrimination.  *See Blair*, 505 F.3d at 534.

(citation omitted)).

To make out a prima facie case of disability discrimination through indirect evidence, a plaintiff must show: 1) he is disabled; 2) he is otherwise qualified for the position, with or without reasonable accommodation; 3) he suffered an adverse employment decision; 4) the employer knew or had reason to know of plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced. *Whitfield v. Tennessee*, 639 F.3d 253, 258-259 (6th Cir. 2011) (citing *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007) (quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996)). Once the plaintiff makes out a prima facie case, the burden shifts to the defendant to articulate a non-discriminatory explanation for the employment action. *Id.* at 259 (citing *McDonnell Douglas*, 411 U.S. at 802-04; *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008)). If the defendant does so, the burden shifts back to the plaintiff to prove that the defendant's explanation is pretextual. *Id.* at 260 (citing *Blair*, 505 F.3d at 532; *Tysinger v. Police Dept. of City of Zanesville*, 463 F.3d 569, 576-77 (6th Cir. 2006)). For a plaintiff to prevail on a discrimination claim under the ADAAA, he must prove that his disability was a but-for cause of his employer's adverse employment action. *Lewis v. Humboldt Acquisition Corp., Inc.*, No. 09-6381, 2012 WL 1889389, __ F.3d. __ (6th Cir. May 25, 2012) (en banc).

An employer discriminates against an employee on account of the employee's disability when the employer fails to make "reasonable accommodations" to the employee's known disability, unless those accommodations would cause "undue hardship" to the employer's business operation. *Jakubowski*, 627 F.3d at 201 (citing 42 U.S.C. § 12112(b)(5)(A)). If a disabled employee requires an accommodation, the employee has the burden of proposing an

accommodation and proving that it is reasonable. *Id*. at 202 (citing *Monette*, 90 F.3d at 1183). The employee also has the burden of proving that he will be "capable of performing the essential functions of the job with the proposed accommodation." *Id*. (citing *Monette*, 90 F.3d at 1184).

Plaintiff has failed to show there is a genuine issue of material fact as to whether defendant failed to accommodate his disability by denying his request for time off to bring his symptoms under control or by requiring him to return to work with no restrictions. Although defendant initially denied plaintiff's request for FMLA leave, it is undisputed that plaintiff was subsequently granted FMLA leave of up to 12 weeks for the same time period. (Doc. 46, Proposed FOF 11; Schrack Depo. at 83-84). Plaintiff therefore has not shown that defendant failed to accommodate him in this manner. Moreover, plaintiff has not introduced any evidence to show that he required an accommodation so that he could return to work following his initial termination on April 1, 2009, or that he proposed any such accommodation. Thus, plaintiff should not be permitted to proceed on his disability discrimination claim under a failure to accommodate theory.

Plaintiff has produced sufficient evidence to create a genuine issue of material fact as to whether he was discharged on account of his disability. Defendant does not dispute in its motion for summary judgment that plaintiff is disabled within the meaning of the ADAAA, he is otherwise qualified for his position with the company, he suffered an adverse employment action in that he was terminated, and defendant knew of plaintiff's disability. Nor is there any dispute that plaintiff was not replaced. The parties' dispute centers on whether plaintiff has carried his heightened burden to produce additional evidence that he would not have been singled out in the RIF "but for" his disability. *See Lewis*, No. 09-6381, 2012 WL 1889389; *Williams v. Emco Maier Corp.*, 212 F. Supp.2d 780 (S.D. Ohio 2002) (Marbley, J.) (in RIF situation, employee has

25

heightened burden of proof to present as part of prima facie disability discrimination case additional evidence tending to indicate the employer singled the plaintiff out for discharge for impermissible reasons) (citing *Barnes*, 896 F.2d at 1465).

The same evidence that permits an inference of retaliation with respect to plaintiff's FMLA retaliatory discharge claim constitutes additional evidence tending to show plaintiff was singled out for termination on account of his disability. Plaintiff was initially terminated almost immediately after defendant first learned of his disability, and he was terminated a second time after he attempted to return from the medical leave that he took to bring the symptoms of his disability under control. The close temporal proximity between these occurrences, coupled with the circumstantial evidence that suggests plaintiff's medical condition may have played a role in the termination decision, is sufficient to establish a prima facie case of disability discrimination in the context of a RIF.

### ii. Plaintiff has introduced evidence that creates a genuine issue as to pretext.

For the same reasons stated in connection with plaintiff's FMLA retaliatory discharge claim, plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether defendant singled him out for discharge based on his disability. The lack of an objective plan for the RIF, when coupled with plaintiff's circumstantial evidence of discrimination based on his disability, is sufficient to create a genuine issue of material fact as to whether defendant's proffered nondiscriminatory reason for terminating plaintiff was a pretext for discrimination based on his disability. *See Blair*, 505 F.3d at 533-34. Defendant should not be granted summary judgment on plaintiff's disability discrimination claim premised on his termination.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Defendants' motion for summary judgment (Doc. 42) be **GRANTED** as to plaintiff's claims against defendants R+L Carriers, Inc.; plaintiff's claims against R+L Carriers; and plaintiff's claims against R+L Carriers Shared Services LLC for age discrimination, interference with his rights under the FMLA, and failure to accommodate his disability.

2. Defendants' motion for summary judgment (Doc. 42) be **DENIED** as to plaintiff's claims against R+L Carriers Shared Services LLC for retaliatory discharge under the FMLA and discriminatory discharge on account of his disability.

Date: 6/18/2012

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

LARRY SCHRACK,
      Plaintiff

    vs

R+L CARRIERS, INC., et al.,
      Defendants

Case No. 1:10-cv-603
Weber, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).